**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

ANDREW CASCIANO,

    *Plaintiff*,

v.

CITY OF PATERSON, PATERSON POLICE DEPARTMENT, RUBEN MCAUSLAND, Individually and under color of State law, ROGER THEN, Individually and under color of State law, TROY OSWALD, CHIEF OF POLICE OF THE PATERSON POLICE DEPARTMENT, Individually and under color of State law, JERRY SPEZIALE, POLICE DIRECTOR FOR THE PATERSON POLICE DEPARTMENT, Individually and under color of State law, JOHN DOES 1-5 AND ABC ENTITIES 1-5 (as yet unknown and unidentified jail officials, supervisors, agents or employees or entities),

    *Defendants*.

Civil Action No. 19-9475

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This action arises out of the assault of Plaintiff Andrew Casciano ("Casciano"), now deceased, by two former officers of the Paterson Police Department. Presently before the Court is a motion to dismiss the Amended Complaint ("AC") by the City of Paterson, the Paterson Police Department, Paterson Police Chief Troy Oswald, and Paterson Police Director Jerry Speziale ("Defendants" or the "City"). D.E. 51. Marie Casciano, Casciano's mother and the Administratrix ad Prosequendum of the Estate of Andrew Casciano ("Plaintiff"), opposed the motion, D.E. 54, to

Defendants replied, D.E. 59.  The Court reviewed the parties' submissions[1] made in support and in opposition and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons stated below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

I.  BACKGROUND[2]

On March 5, 2018, Casciano placed an emergency call to 911 for assistance after he attempted suicide.  AC ¶ 20.  Defendants Ruben McAusland and Roger Then, then Paterson Police Department officers, went to St. Joseph's hospital in response.  *Id.* ¶ 22.  While Casciano was in a wheelchair in the St. Joseph's emergency room, McAusland punched Casciano in the face and Then pushed him to the ground.  *Id.* ¶¶ 23-24.  Casciano was subsequently placed in a patient room, where McAusland struck Casciano twice across the face while he was lying in a hospital bed.  *Id.* ¶ 25.  McAusland's assault of Casciano was recorded by Then on his phone.

McAusland and Then were criminally charged for their misconduct against Casciano and pled guilty to violations of federal law.  *Id.* ¶¶ 44-46.  During his sentencing, McAusland "spoke of his repeated acts of unlawful conduct" during the three years he was employed by the Paterson Police Department prior to his assaulting Casciano.  *Id.* ¶ 45.  Videos of Casciano's assault were shown during McAusland's sentencing, and the videos later went viral.  *Id.* ¶ 47.  During his sentencing, Then told the court that he had requested to be transferred away from working with McAusland but his requests were denied.  *Id.* ¶ 46.

---

[1] Defendants' brief in support of its motion to dismiss (D.E. 51-1) will be referred to as "Br.";  Plaintiff's opposition brief (D.E. 54) will be referred to as "Opp."; and Defendants' letter in reply (D.E. 59) will be referred to as "Reply."

[2] The factual background is taken from the Amended Complaint ("AC"), D.E. 47.  When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

On April 10, 2019, Casciano commenced the present action against the City and Defendants McAusland and Then. D.E. 1. On June 28, 2019, the City filed a motion to dismiss, D.E. 10, which was not decided. On December 23, 2019, Casciano committed suicide, and his body was discovered by his mother. *Id.* ¶ 47. Casciano left a note attributing his suicide to the underlying lawsuit arising from McAusland and Then's assault. *Id.* ¶ 100.

On January 10, 2021, Plaintiff moved for leave to amend the Complaint to include claims under the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1 et seq. ("Wrongful Death Act") and the New Jersey Survivor's Act, N.J.S.A. 2A:15-3 ("Survivor's Act"), D.E. 42, which Defendants opposed, D.E. 43. Judge Falk granted Plaintiff's motion for leave to amend, D.E. 46, which this Court upheld on appeal, D.E. 73. On June 16, 2021, Plaintiff filed her Amended Complaint. D.E. 47. The Amended Complaint asserts claims by Marie Casciano in her capacity as Administratrix ad Prosequendum of the Estate of Andrew Casciano and in her individual capacity. *Id.* Plaintiff brings claims pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), torts claims, along with the Wrongful Death Act and Survivor's Act claims. *Id.* The current motion followed. D.E. 51.

## II.   STANDARD OF REVIEW

Defendants move to dismiss the Complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover

3

proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). A court "must accept all of the complaint's well-pleaded facts as true." *Id.* at 210. However, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a plausible claim. *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

### III. ANALYSIS

#### A. Claims Against the Paterson Police Department

At the outset, Defendants argue that Plaintiff's claims against the Paterson Police Department should be dismissed because police departments are city subdivisions rather than separate entities. Br. at 12-13 (citing *Padilla v. Twp. Of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004)). Plaintiff does not object to dismissing the claims against Paterson Police Department on this basis. Opp. at 3. Consequently, the claims against the Paterson Police Department are dismissed with prejudice. *See Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003) ("Police departments cannot be sued alongside municipalities because a police department is merely an administrative arm of the municipality itself.").

#### B. *Monell* and New Jersey Civil Rights Act Claims

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"). AC ¶¶ 48-70. Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

4

at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  To state a Section 1983 claim, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law."  *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

> The NJCRA affords a private cause of action to
>
>> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J.S.A. 10:6-2.  The "NJCRA was modeled after § 1983, [so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart."  *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (internal quotations and citation omitted).  Therefore, the Court considers Plaintiff's Section 1983 and NJCRA claims together.

A municipality or local governing body cannot be held liable under a theory of *respondeat superior* for a Section 1983 claim.  *Monell v. Dept. of Social Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978).  Instead, a municipality may be liable under Section 1983 only "if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury."  *Jewell v. Ridley*

*Township*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell*, 436 U.S. at 694).[3] A policy exists "when a decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (internal quotation and alteration omitted). A custom may be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id*. at 155-56 (internal quotation omitted). Ultimately, to plausibly plead *Monell* liability, "[a] plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985) (internal citation and quotation marks omitted).

A *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline. To plead such a failure-to claim, a plaintiff must demonstrate that a city's failure "reflects a deliberate or conscious choice." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, 800 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)). For claims involving police officers, the alleged failure can only serve as a basis for Section 1983 liability where it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (explaining that a *Monell* claim that is "predicated on a failure or inadequacy has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality"). Deliberate indifference is plausibly pled by showing that "(1) municipal policy

---

[3] Claims asserting municipal liability pursuant to Section 1983 are commonly referred to as *Monell* claims.

makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)). Moreover, "'[d]eliberate indifference' is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action… Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (emphasis added) (internal quotations, citations, and brackets omitted).

Plaintiff essentially brings *Monell* claims premised on the City's policy and custom and alleged failure to properly hire, train, and supervise police personnel. Plaintiff alleges that the City acted with "deliberate and conscious indifference" of Casciano's constitutional rights by maintaining "a pattern of custom, policy and practice" of "allowing the use of excessive force, permitting and condoning the use of excessive force and violation of police procedures as well as the failure to properly hire, train and supervise police officers in the proper conduct of their duties and in the use of force." AC ¶ 37. Plaintiff further claims that the City acted with deliberate and conscious indifference by allowing McAusland to participate in police work while having prior knowledge that he "he had improperly engage [sic] in illegal activities including in multiple drug related transactions between September 2017 and the end of February 2018." *Id*. ¶ 38. Plaintiff continues that Defendants had knowledge of institutionalized practices of the Paterson Police Department "consistent with" Casciano's assault, and that despite this knowledge, Defendants did not take action to prevent Paterson Police personnel from continuing to engage in misconduct. *Id*. ¶¶ 39-40. Additionally, Defendants allegedly "had prior notice of the vicious propensities" of

McAusland, Then, and John Does 1-5 but failed to train them or correct their abuse of authority. *Id.* ¶ 41. Plaintiff further adds that the City "authorized, tolerated as institutionalized practices, and ratified" officer misconduct by failing to discipline employees "known to be irresponsible in their dealings with citizens of the community"; to take adequate precautions in hiring, promoting, and retaining police personnel; to complete reports as required evidencing criminal acts committed by police personnel; and to establish or assure a meaningful departmental system for dealing with complaints of police misconduct. *Id.* ¶ 43.

Defendants argue that Plaintiff has not sufficiently pled *Monell* liability. Br. at 4-8. Defendants appear to assert that Plaintiff has not alleged facts establishing a challenged policy or custom, attributing that policy or custom to the municipality, and showing a causal link between the execution of the policy or custom and the injury suffered. Id. at 4-5. Defendants further contend that Plaintiff has not adequately plead a *Monell* claim for negligent training because she has not demonstrated that the alleged failure to train amounted to deliberate indifference to the rights of individuals with whom the police came into contact. Br. at 5-6. Similarly, Defendants appear to assert that Plaintiff has not demonstrated deliberate indifference in relation to the City's failure to supervise. *Id.* at 7. Finally, Defendants contend that Plaintiff's negligent hiring claim is "tenuous and unfounded" because Plaintiff does not allege facts giving rise to a deliberate indifference claim based on hiring practices or facts predating the hiring of McAusland and Then of which the City should have been aware. *Id.* at 7-8.

The Court agrees that Plaintiff has failed to adequately plead her *Monell* claims. First, Plaintiff alleges in a conclusory manner that the City maintained "a pattern of custom, policy and practice" of excessive force and failure to properly hire, train, and supervise. AC ¶ 37. However, Plaintiff does not specifically identify the allegedly unconstitutional policy or custom, attribute it

to the City, or explain the causal link between the execution of the policy and the injury suffered. *See Kranson*, 755 F.2d at 51. Plaintiff's "threadbare conclusion that Defendants acted pursuant to an official policy or custom [is] insufficient to state a claim." *Florentino v. City of Newark*, No. 19-CV-21055, 2020 WL 5105291, at *11 (D.N.J. Aug. 31, 2020) (finding that pleading standard was not met where the plaintiff failed to identify with requisite specificity the allegedly unconstitutional policy or custom or any decisionmaker with the requisite authority to establish such policy or custom); *see also Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (dismissing claim against city because plaintiff failed to plead facts demonstrating the existence of a policy or custom).

Likewise, Plaintiff has not sufficiently plead that the City's alleged failure to hire, train, and supervise amounted to deliberate indifference of Casciano's constitutional rights. Plaintiff alleges that the City allowed McAusland to participate in police work while having knowledge of his participation in illegal drug-related transactions. AC ¶ 38. However, Plaintiff does not detail how the City had contemporaneous knowledge of these illegal activities, *see* Reply at 2, or how McAusland's history of drug transactions relates to Casciano's assault. Additionally, Plaintiff claims that the City had prior notice of McAusland's and Then's "vicious propensities" and that the officers were "known to be irresponsible in their dealings with citizens of the community," AC ¶¶ 41, 43, but fails to provide any factual detail supporting these allegations. Similarly, Plaintiff alludes to McAusland's "repeated acts of unlawful conduct" prior to his assault of Casciano, *id*. ¶ 45, but does not specify what this alleged unlawful conduct entailed. Without more, Plaintiff cannot maintain *Monell* claims predicated upon deliberate indifference.[4]  *See, e.g.*, *Florentino v.*

---

[4] Plaintiff provides additional detail in her Opposition Brief, but "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal quotation omitted).

*City of Newark*, 2020 WL 5105291, at *11-12 (dismissing *Monell* claims where the plaintiff failed to adequately allege that the defendant's failure to train amounted to deliberate indifference). Further, regarding Plaintiff's failure to hire claim, Plaintiff has not alleged any relevant facts predating the hiring of McAusland and Then that would support a negligent hiring claim.

For the foregoing reasons, Plaintiff's *Monell* and NJCRA claims are dismissed. As a result, the Court does not reach Defendants' qualified immunity argument on this issue.

### C. Intentional Torts

Plaintiff asserts various torts claims, including false restraint and imprisonment (Count Three), emotional distress (Count Four), abuse of process (Count Five), conspiracy (Count Six), negligence (Count Seven) and negligent infliction of emotional distress (Count Nine). AC ¶¶ 77-80. Defendants argue that municipal entities are not responsible for intentional torts under the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:2-2(a), and therefore the claims should be dismissed. Br. at 11-12. Plaintiff argues that the City should not be shielded from vicarious liability under the NJTCA for Then's negligence in failing to intervene and McAusland's and Then's negligence in filing a false police report because such acts were not intentional. Opp. at 24, 27. In so arguing, Plaintiff appears to concede that the City cannot be held vicariously liable for intentional torts committed by McAusland and Then.

The NJTCA provides that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:2-10. Thus, "there can be no vicarious liability by a public entity for intentional torts committed by its employees." *Hoag v. Brown*, 397 N.J. Super. 34, 54 (App. Div. 2007). Accordingly, Plaintiff's false restraint and imprisonment claim must be dismissed as against the City. *See Prunkel v. Cty. of Bergen*, Civ. Action No. 17-5154, 2017 WL 5483165, at *4 (D.N.J. Nov. 15, 2017) (dismissing

10

claims of false imprisonment, abuse of process, and civil conspiracy because a public entity cannot be held liable for intentional torts allegedly committed by its employees). Likewise, Plaintiff's abuse of process claim against the City is dismissed. *See id.* The Court assumes that Plaintiff's "emotional distress" claim stated in Count Four, AC ¶¶ 77-80, alleges intentional infliction of emotional distress, as Plaintiff states a separate cause of action for negligent infliction of emotional distress, AC ¶¶ 98-101. Because Plaintiff's emotional distress claim alleges an intentional tort, it is dismissed as against the City. *See Soto v. City of Newark*, 72 F. Supp. 2d 489, 497 (D.N.J. 1999) (dismissing intentional infliction of emotional distress claim against City of Newark because public entities may not be held liable for intentional torts of its employees). Plaintiff alleges that "Defendants unlawfully conspired to assault, commit battery upon, injure and deprive Andrew Casciano of his rights," AC ¶ 86. The Court assumes that Plaintiff alleges civil conspiracy, an intentional tort, and dismisses this claim against the City for the same reasons stated above. *See Prunkel*, 2017 WL 5483165, at *4.[5]

However, the Court rejects Defendants' argument that Plaintiff's causes of action for negligence and negligent infliction of emotional distress are intentional torts for which the City is not liable. *See Lawson v. E. Orange Sch. Dist.*, Civ. A. No. 16-2704, 2017 WL 751425, at *2 (D.N.J. Feb. 27, 2017) ("[T]here is no respondeat superior liability for intentional torts *as opposed*

---

[5] If the civil conspiracy relates to Section 1983, the Court would reach the same result. To prove a civil conspiracy under Section 1983, a plaintiff must show "that two or more co-conspirators reached an agreement for the purpose of depriving constitutional rights under color of state law." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 646 (D.N.J. 2011). The "linchpin for [Section 1983] conspiracy is agreement, concerted action, without more, cannot suffice to state a conspiracy claim." *Watson v. Sec. Pa. Dept. of Corrections*, 436 F. App'x 131, 137 (3d Cir. 2011) (internal quotations and punctuation omitted). Here, Plaintiff alleges in a conclusory fashion that "Defendants acted jointly and in concert with each other, and conspired and agreed between and amongst themselves to commit unlawful assault, battery and violations of civil rights upon Andrew Casciano." AC ¶ 36. However, Plaintiff fails to provide any detail supporting the existence of an agreement among the City, McAusland, and Then.

*to negligence*") (emphasis added). Therefore, the Court next analyzes whether Plaintiff's negligence claims should be dismissed on other grounds.

### D. Negligence and Negligent Infliction of Emotional Distress

Plaintiff alleges as to the City that "Defendants were negligent and acted in a palpably unreasonable matter in their hiring and retention of Defendants McAusland and Then" because they had knowledge that McAusland and Then "were unfit to serve as police officers." AC ¶¶ 89-90. Plaintiff alleges that due Defendants' negligence, Casciano "sustained and received severe, painful and permanent injuries," resulting in pain and mental anguish, confinement, medical expenses, and the interruption of Casciano's normal business and vocation. *Id.* ¶ 92.

A plaintiff may assert a claim against an entity pursuant to the NJTCA based on a theory of negligent hiring or supervision. Hoag, 397 N.J. Super. at 54. Accordingly, an employer may be liable for the torts of its employees "where it knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons." *Di Cosala v. Kay*, 91 N.J. 159, 173 (1982).

Though Defendants advance arguments in support of dismissing Plaintiff's claim of negligent hiring under Section 1983, *see* Br. at 7-8, they fail to offer a basis upon which to dismiss Plaintiff's state law negligence claim aside from the intentional tort argument that the Court rejected above.[6] Accordingly, the Court will not dismiss Plaintiff's negligence claim.[7]

---

[6] With regard to Plaintiff's Wrongful Death Act claim, Defendants argue that they did not owe Casciano a duty at the time of his suicide. Br. at 16. However, that inquiry is distinct from whether Defendants owed Casciano a duty in relation to their hiring of McAusland and Then and the assault of Casciano allegedly resulting from such negligent hiring.

[7] Plaintiff fails to allege that the elements of a negligence claim are met, and thus her negligence claim is not well-plead. *See Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576,

Plaintiff also brings a claim in her individual capacity for negligent infliction of emotional distress for the "mental anguish, suffering and shock" she experienced as a result of discovering Casciano's body following his suicide. AC ¶¶ 98-101. Again, Defendants fail to raise arguments for dismissal of this claim aside from their contention that municipal entities are not responsible for intentional torts.[8] Thus, this claim also survives Defendants' motion to dismiss.[9]

### E. Wrongful Death and Survivorship Act

Plaintiff brings Wrongful Death Act and Survivorship Act claims, alleging that Casciano "experienced great emotional distress from the assaults of March 5, 2018 and the publication of videos of the assaults…which lead to a spiraling of his depression through the summer of 2019 and ultimately his suicide on December 23, 2019." AC ¶ 95. The Wrongful Death Act confers a cause of action "[w]hen the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury." N.J. Stat. Ann. § 2A:31–1.

---

594, 59 A.3d 561, 571 (2013) ("In New Jersey, as elsewhere, it is widely accepted that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages."). However, because Defendants do not raise this issue, the Court will not dismiss Plaintiff's negligence claim on this basis.

[8] Although Defendants argue that they did not owe *Casciano* a duty at the time of his suicide, Defendants advance no arguments regarding their duty to Plaintiff Marie Casciano *in her individual capacity*. Accordingly, Defendants' negligence arguments vis-à-vis Plaintiff's Wrongful Death Act claim do not apply to Plaintiff's negligent infliction of emotional distress claim.

[9] As with the negligence claim, Plaintiff's negligent infliction of emotional distress claim is not sufficiently plead. *See Jovic v. Legal Sea Foods, LLC*, No. 16-CV-1586, 2018 WL 5077900, at *6 (D.N.J. Oct. 18, 2018) ("To prove a claim of negligent infliction of emotional distress, a plaintiff must establish: (1) a duty of care; (2) breach of that duty; (3) causation; and (4) damage in the form of severe emotional distress that was reasonably foreseeable.") (internal citation omitted).

"To assert a cause of action for wrongful death, Plaintiffs must assert (1) that Plaintiff's death was caused by a wrongful act, and (2) that Plaintiff would have been able to maintain an action for damages had he survived." *Gunter v. Twp. of Lumberton*, Civ. No. 07-4839, 2012 WL 2522883, at *11 (D.N.J. June 29, 2012), *aff'd*, 535 F. App'x 144 (3d Cir. 2013). In other words, a wrongful death claim must be predicated upon an underlying violation or tortious conduct. *See*, *e.g.*, *Williams v. Ponik*, Civ. A. No. 15-1050, 2019 WL 168827, at *16 (D.N.J. Jan. 11, 2019), *aff'd in part*, *vacated in part*, 822 F. App'x 108 (3d Cir. 2020) (finding that the plaintiff's wrongful death and survival action claims failed because the plaintiff had not established any underlying violation or tortious conduct); *Gomez v. H&M Int'l Transportation, Inc.*, Civ. A. No. 17-231, 2017 WL 3951598, at *7 (D.N.J. Sept. 7, 2017) (upholding wrongful death and survival claims because the plaintiff had sufficiently plead an underlying claim for negligence).

Here, Plaintiff does not specify the basis of the City's alleged liability under the Wrongful Death Act and Survivor's Act. However, per the Court's findings above, Plaintiff's claim that the City negligently hired and retained McAusland and Then is the only viable tortious conduct upon which Plaintiff may base her wrongful death claim against the City. "In the wrongful death context, as elsewhere, the tort of negligence has four essential elements: '(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages.'" *Williams v. Bd. of Educ. of Paterson*, Civ. No. 15-0765, 2017 WL 3131974, at *3 (D.N.J. July 21, 2017) (quoting *Davis v. Brickman Landscaping, Ltd.*, 219 N.J. 395, 406, 98 A.3d 1173, 1179 (2014)). Defendants argue that Plaintiff's wrongful death claim should be dismissed because Casciano's suicide was not a foreseeable consequence of excessive force; the City did not owe Casciano a duty at the time of his suicide; and Casciano indicated that his suicide was a result of the lawsuit rather than being assaulted. Br. at 13-17. Plaintiff counters that "[i]ssues of proximate cause, duty and whether

14

[Casciano's] suicide was the result of the lawsuit, not the assault, are merits-based arguments…and are for a jury to decide." Opp. at 28.

The Court agrees with Plaintiff that "[o]rdinarily questions of proximate cause are left to the jury for its factual determination." *Jakelsky v. Friehling*, 33 F. Supp. 2d 359, 366 (D.N.J. 1999) (internal citations omitted). However, under New Jersey law, "the question of whether a duty is owed is a question of law to be decided by the court." *Port Auth. of New York & New Jersey v. Arcadian Corp.*, 189 F.3d 305, 312 (3d Cir. 1999) (citing *Strachan v. John F. Kennedy Mem'l Hosp.*, 109 N.J. 523, 538 A.2d 346, 349 (1988)). Here, Plaintiff fails to allege with respect to her wrongful death claim that the City owed Casciano a duty. Because Plaintiff fails to sufficiently plead an element of an underlying negligence claim, Plaintiff's wrongful death claim is dismissed. *See Est. of Moore v. Cumberland Cty.*, Civ. No. 17-2839, 2018 WL 1203470, at *5 (D.N.J. Mar. 8, 2018) (dismissing wrongful death claims because all of the elements of a negligence claim were not pleaded in the complaint).

### F. Damages for Pain and Suffering

Defendants argue that Plaintiff cannot recover damages for pain and suffering arising from her state law claims. The NJTCA provides, in relevant part:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J.S.A. 59:9-2(d). Defendants contend that "Plaintiff has not alleged any facts demonstrating a permanent injury," and thus may not recover for pain and suffering damages. Br. at 9. Plaintiff responds that she may recover noneconomic loss for a displaced fracture, which Casicano suffered. Opp. at 22. In support, Plaintiff cites to an inapposite case holding that a plaintiff may maintain a

15

suit for noneconomic losses for a displaced fracture under the New Jersey Automobile Insurance Cost Reduction Act of 1998. *Id.* Because Plaintiff has not alleged the "permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00," Plaintiff cannot maintain a claim for pain and suffering damages. *See K.M. v. Asbury Park Bd. of Educ.*, No. 18CV10171PGSTJB, 2020 WL 1234716, at *5 (D.N.J. Mar. 12, 2020) (finding that dismissal of the plaintiff's negligence claims was additionally warranted for failure to plead that the alleged negligence resulted in permanent injury).

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED in part and DENIED in part.** The dismissal is without prejudice and Plaintiff shall have thirty (30) days to file a second amended complaint that cures the deficiencies noted herein. If Plaintiff does not file an amended complaint within that time, the claims dismissed without prejudice will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: January 19, 2022

_____
John Michael Vazquez, U.S.D.J.