**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIE CASCIANO, General Administratrix and Administratrix Ad Prosequendum of the ESTATE OF ANDREW CASCIANO, and MARIE CASCIANO, individually,<br><br>   *Plaintiff*,<br><br> v.<br><br>CITY OF PATERSON, et al.,<br><br>   *Defendants*. | Civil Action No. 19-09475<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter arises out of the assault of Andrew Casciano, now deceased, by two former officers of the Paterson Police Department. Presently before the Court is the motion of Defendants City of Paterson, Paterson Police Department,[1] Chief Troy Oswald, and Director Jerry Speziale (the "City Defendants") to dismiss the Second Amended Complaint ("SAC"). D.E. 83. The Court reviewed the parties' submissions[2] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, the City Defendants' motion, D.E. 83, is **GRANTED**.

---

[1] While the motion indicates that it is on behalf of Paterson Police Department, D.E. 83, the Court's prior Opinion dismissed all claims against the Paterson Police Department with prejudice. D.E. 74 at 4.

[2] The submissions consist of the City Defendants' motion, D.E. 83; and the accompanying brief, D.E. 83-1 ("Br."); Plaintiff's opposition, D.E. 105 ("Opp."); and the City Defendants' reply, D.E. 108 ("Reply").

## I.   FACTUAL BACKGROUND[3]

On March 5, 2018, Andrew Casciano called 911 after attempting suicide.  SAC ¶ 19.  He was transported to St. Joseph's hospital.  *Id.* ¶ 20.  Defendants Ruben McAusland and Roger Then, then Paterson Police Department officers, went to St. Joseph's in response.  *Id.* ¶ 21.  Plaintiff alleges that while Casciano was sitting in a wheelchair in the waiting area of the emergency room, McAusland "pushed [him] and then punched [him] in the face with his right hand."  *Id.* ¶ 22.  Following the punch, "Then grabbed Andrew Casciano by the back of the neck and further pushed [him] to the ground."  *Id.* ¶ 23.  Subsequently, Casciano was put in a patient room and was lying in a hospital bed when McAusland "put on a pair of exam gloves and violently struck [Casciano] twice across the face."  *Id.* ¶ 24.  McAusland then said "I ain't [expletive] playing with you" to Casciano.  *Id.* (alteration in original).  Defendant Then allegedly recorded the incident on his phone and "laughed while Defendant McAusland was assaulting Andrew Casciano."  *Id.* ¶ 25.  Casciano "sustained severe permanent personal injuries" from this incident.  *Id.* ¶ 26.

McAusland and Then were criminally charged for their misconduct against Andrew Casciano.  *Id.* ¶¶ 27-29.  "McAusland pled guilty to the charge of deprivation of a person's rights under color of law as protected by the United States Constitution," *id.* ¶ 27, and "Then pled guilty to the charge of Misprison of Felony," *id.* ¶ 29.  During his sentencing on March 27, 2019, Defendant McAusland "spoke of his repeated acts of unlawful conduct while a police officer."  *Id.* ¶ 28.  The videos of the assaults on Andrew Casciano were published at McAusland's sentencing and later "went viral" on the internet.  *Id.* ¶ 31.

---

[3] The Factual Background is taken from the SAC.  D.E. 77.  As explained herein, the Court considers certain exhibits because they are integral to or explicitly relied upon in the SAC, but disregards others which cannot be appropriately considered at the motion to dismiss stage.

During Then's sentencing on April 2, 2019, he stated that "he had made requests to his supervisors to be transferred away from working with Defendant McAusland, but his requests were denied." *Id.* ¶ 30. He further stated that there were times where he "dreaded going to work because [he] knew [he] had to work with McAusland. *Id.* Then also stated that "[s]ince [McAusland] was [his] senior officer, [he] had to do what [McAusland] say. No questions asked." *Id.* Then also allegedly stated that he "tried asking other senior officers advice on how [he] could deal working with McAusland, but, no one did anything to help."[4] *Id.* ¶ 30.

Plaintiff claims that the City Defendants knew or should have known of McAusland and Then's propensity for violence and/or to commit the wrongful acts against him. *Id.* ¶ 101. Plaintiff points to a media report regarding use of force by New Jersey police officers, *id.* ¶¶ 32-37, allegations of excessive use of force made against McAusland, *id.* ¶¶ 38-39, and the fact that the City Defendants were investigating McAusland for his involvement in drug transactions, *id.* ¶ 40.

---

[4] These facts were pled in the SAC and thus may be considered at the 12(b)(6) stage. In her Opposition, Plaintiff references additional facts which were not asserted in the SAC. Plaintiff attaches Then's deposition transcripts in this matter and his interrogatory responses. D.E. 105-3; D.E. 105-4; D.E. 105-2. Plaintiff also attaches transcripts from the sentencings of other former Paterson officers known as the "Robbery Squad." D.E. 105-7; D.E. 105-8; D.E. 105-9; D.E. 105-10. Although the Court can take judicial notice of public records when deciding a motion to dismiss, it cannot "go so far as to take judicial notice of the truth of the facts set forth in the transcripts." *Easterling v. Perez*, No. 16-4463, 2017 WL 3610484, at *4 (D.N.J. Aug. 22, 2017) (judicially noticing "the fact that Plaintiff was found guilty by a jury" and the crimes of conviction, but refusing to take judicial notice of the "underlying evidence set forth in the criminal trial transcript" to determine the plausibility of the plaintiff's claims); *see also Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 632 (3d Cir. 2018) ("Under the Rule 12(b)(6) standard, courts . . . may consider deposition testimony, but only for the existence of the testimony—not for the truth of the facts asserted therein."); *Patyrak v. Apgar*, No. 10-6800, 2012 WL 2118743, at *4 (D.N.J. June 11, 2012) (noting that in deciding a motion to dismiss, "a judicial transcript may not be relied upon for the truth of the matters asserted therein" (citing *Brody v. Hankin*, 145 F. App'x 768, 772 (3d Cir. 2005)). Thus, the facts stated in Then's deposition transcript and interrogatory responses, and in the transcripts from the sentencings of the "Robbery Squad" members, may not be considered at this stage when they were not asserted in or integral to the SAC.

Plaintiff asserts that "[d]ue to stress caused to Andrew Casciano by the assaults and videos going viral, Andrew Casciano's depression spiraled through the summer of 2019 and ultimately were a proximate cause of his suicide on December 23, 2019." SAC ¶ 31. Casciano's mother, Plaintiff Marie Casciano, discovered his hanging body. *Id.* Andrew Casciano "left a note at the scene of his suicide relating his suicide to his lawsuit arising from the assaults of March 5, 2018." *Id.* ¶ 114; *see* D.E. 105-6.[5]

On April 10, 2019, Andrew Casciano filed his initial Complaint in this matter. D.E. 1. On January 10, 2021, Plaintiff moved for leave to amend the Complaint to include claims under the New Jersey Wrongful Death Act, N.J.S.A. § 2A:31-1 ("Wrongful Death Act") and the New Jersey Survivor's Act, N.J.S.A. § 2A:15-3 ("Survivor's Act"), D.E. 42, which Defendants opposed, D.E. 43. Chief Magistrate Judge Falk granted Plaintiff's motion, D.E. 46, which the Court upheld on appeal, D.E. 73. On June 16, 2021, an Amended Complaint was filed by Marie Casciano. D.E. 47. On January 19, 2022, the Court granted in part and denied in part the City Defendants' motion to dismiss. D.E. 74, 75. On February 17, 2022, Plaintiff filed her Second Amended Complaint. D.E. 77. The SAC again asserts claims by Marie Casciano both in her individual capacity, and in her capacities as General Administratrix and Administratix Ad Prosequendum of the Estate of Andrew Casciano. SAC ¶ 15. Plaintiff's claims on behalf of the Estate as to the City Defendants include violation of § 1983 and the New Jersey Civil Rights Act ("NJCRA") (First and Second Causes of Action), negligence (Seventh Cause of Action), and a Survivor's Act claim (Eighth

---

[5] Plaintiff attached an image of Andrew Casciano's alleged suicide note to her opposition to the motion. D.E. 105-6. The Court may consider this document because it is integral to and explicitly relied upon in the Complaint. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (explaining that when deciding a motion to dismiss under Rule 12(b)(6), a court may rely on "a document *integral to or explicitly relied* upon in the complaint" (emphasis in original) (citation omitted)).

Cause of Action). Plaintiff also brings a claim against the City Defendants in her capacity as administrator of the estate for wrongful death (Eighth Cause of Action), and in her individual capacity for negligent infliction of emotional distress (Ninth Cause of Action). The City Defendants move to dismiss all claims against them.[6]

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true" and give a plaintiff the benefit of all reasonable inferences therefrom. *Fowler*, 578 F.3d at

---

[6] Plaintiff also brings claims for false restraint and imprisonment (Third Cause of Action), intentional infliction of emotional distress (Fourth Cause of Action), abuse of process (Fifth Cause of Action), and civil conspiracy (Sixth Cause of Action). These claims appear to be asserted solely against Defendants McAusland and Then. McAusland and Then are not parties to the present motion, D.E. 83, and the claims against them are unaffected by this Opinion.

210.   "[T]he defendant bears the burden of showing that the plaintiff has not stated a claim."

*United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 299 n.4

(3d Cir. 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

## III.   ANALYSIS

### A. *Monell* Claims and New Jersey Civil Rights Act – Counts One and Two

In its prior opinion, D.E. 74 ("Prior Op."), the Court ruled that Plaintiff did not plausibly

plead a *Monell* claim because Plaintiff failed to specifically identify the alleged custom or how it

could be attributed to the City.   Plaintiff also did not explain how the City would know of

Defendants McAusland and Then's "vicious propensities" to support a claim of deliberate

indifference to Andrew Casciano's rights or allege any facts prior to their hiring that would support

a negligent hiring claim.   *Id.*   Plaintiff again has not plausibly pled such facts.   Plaintiff asserts

claims pursuant to 42 U.S.C. § 1983 and the NJCRA.   SAC ¶¶ 58-78.   Section 1983, in relevant

part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.   To state a claim pursuant to § 1983, a plaintiff must demonstrate that "(1) a

person deprived him of a federal right; and (2) the person who deprived him of that right acted

under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir.

1995) (citation omitted).   Under the NJCRA, a private cause of action is afforded to

> [a]ny person who has been deprived of any substantive due process
> or equal protection rights, privileges or immunities secured by the
> Constitution or laws of the United States, or any substantive rights,
> privileges or immunities secured by the Constitution or laws of this

6

> State, or whose exercise or enjoyment of those substantive rights,
> privileges or immunities has been interfered with or attempted to be
> interfered with, by threats, intimidation or coercion by a person
> acting under color of law[.]

N.J.S.A. § 10:6-2c. "As the NJRCA was modeled after § 1983, courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (internal quotation marks and citation omitted). Therefore, the Court considers Plaintiff's Section 1983 and NJRCA claims together.

As previously noted, a municipality cannot be held liable on a Section 1983 claim under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).[7] "'[A] municipality can be found liable under § 1983 only when the municipality itself causes the constitutional violation at issue.'" *Fernandez v. Borough of Roseland*, No. 20-00103, 2021 WL 3930718 at *4 (D.N.J. Sept. 2. 2021) (quoting *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015)). Specifically, the plaintiff must identify a "municipal 'policy' or 'custom' that was the 'moving force' behind the injury." *Jewell v. Ridley Twp.*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell*, 436 U.S. at 694). "[A] plaintiff shows that a policy existed when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (internal quotation marks and alteration omitted). To establish a custom, a plaintiff must show "that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* at 155-56 (internal quotation marks and citation omitted). Ultimately, to establish a *Monell* claim a "plaintiff 'must identify the

---

[7] Claims asserting municipal liability pursuant to Section 1983 are commonly referred to as *Monell* claims.

challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered.'" *Grande v. Keansburg Borough*, No. 12-1968, 2013 WL 2933794, at \*11 (D.N.J. June 13, 2013) (quoting *Losch v. Borough of Parkesburg, Pa.*, 36 F.2d 903, 910 (3d Cir. 1984)).

A *Monell* claim may be based on a municipality's failure to train, supervise, and discipline its employees. A plaintiff can plead a failure-to claim by showing that a city's failure "'reflects a deliberate or conscious choice.'" *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). "For claims involving police officers, the Supreme Court has held that the failure to train 'serve[s] as [a] basis for § 1983 liability only where [it] . . . amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (explaining that a *Monell* claim that is "predicated on a failure or inadequacy has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality").

To plausibly plead deliberate indifference, a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 632-33 (3d Cir. 2018) (quoting *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011) (internal citation and brackets omitted)). Furthermore, "'[d]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action . . . Ordinarily, a pattern of similar constitutional

violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (emphasis added) (internal quotation marks, citation and brackets omitted); *see also Bd. of Cnty. Comm'rs of Bryan Cnty, Okla. v. Brown*, 520 U.S. 397, 410-11 (1997) (stating that deliberate indifference to the plaintiff's constitutional rights is required to state a *Monell* claim based on hiring practices); *Forrest*, 930 F.3d at 106 (noting the differences between "a municipal policy or custom theory" and a "failure or inadequacy theory" and indicating that "one whose claim is predicated on a failure or inadequacy has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality"); *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (observing that "a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show . . . contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents"); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (indicating that supervisory liability will only be imposed where the supervisor was aware of a particular risk and indifferent to that risk).

The City Defendants first argue that "Plaintiff does not allege a relevant policy, practice or custom, nor does [she] allege the causal link between a relevant policy, practice or custom and the alleged constitutional harm." Br. at 9. The City Defendants add that

> insofar as Plaintiff's *Monell* claim is based on a failure to train, supervise, or discipline the Former Police Officers, Plaintiff does not allege sufficient facts showing that there was a history within the City of Paterson Police Department of failing to properly train officers on use of excessive force, of failing to properly supervise officers regarding use of force . . . or of failing to properly discipline officers who were investigated and found to have used excessive force.

*Id.* at 9-10.

Plaintiff agrees that to establish her *Monell* and supervisory liability theories, she must plausibly allege that the City Defendants were deliberately indifferent to Andrew Casciano's rights or that they "acquiesce[ed] in the excessive use of force by [Paterson] police officers." Opp. at 20 (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 974 (3d Cir. 1996)). But Plaintiff has failed to plausibly plead deliberate indifference to Andrew Casciano's rights. Plaintiff argues that the City Defendants "had prior knowledge that its officers improperly engaged in illegal activities including continuous engagement in multiple drug-related transactions . . . and numerous incidents where they exercised improper use of force[.]" Opp. at 22. The SAC alleges that the City Defendants allowed McAusland to participate in police activity while knowing that he "had improperly engaged in illegal activities including in multiple drug related transactions. SAC ¶ 52. However, even assuming the City Defendants knew of these drug transactions, Plaintiff fails to explain how such facts demonstrate deliberate indifference with regard to the "assault and excessive force, restraint, imprisonment, false reporting and abuse of process," *id.* ¶ 63, allegedly committed against Andrew Casciano, which is what is at issue in Plaintiff's claims.

As to the City Defendants' knowledge of propensity for excessive use of force, the SAC alleges that according to NJ Advance Media's report concerning use of force by police officers in New Jersey from 2012 through 2016 (the "Use of Force Report"), "City of Paterson averaged 377 police officers, with 1,869 uses of force, or a rate of 48.1 incidents per 1000 arrests. These numbers were higher than 401 other police departments." *Id.* ¶¶ 32-33. These facts indicate that Paterson Police officers use force more frequently, but not that they use *excessive* force in a manner that deprives citizens of their rights. *See Oslin v. City of Vineland*, No. 21-461, 2022 U.S. Dist. LEXIS 21388, at *14-15 (D.N.J. Feb. 7, 2022) (holding that use of force statistics alone, "cannot sustain a claim of deliberate indifference to a pattern or practice" and that adopting use of force statistics

to ascribe *Monell* or NJCRA liability "would require the Court to speculate and ascribe wrongdoing or a finding of excessiveness to every use of force incident catalogued"). Plaintiff also alleges, upon information and belief, that the Use of Force Report identified McAusland as being "involved in two use of force incidents in 2015 and six use of force incidents in 2016, while the department average for the City of Paterson was 5.7 incidents over the entire five (5) year period reviewed." SAC ¶ 36. Again, these facts do not indicate that McAusland used excessive force in any of these incidents.

Plaintiff continues that McAusland faced two allegations of excessive use of force: the first as to an incident on May 28, 2015, and the second as to an incident on March 5, 2017. *Id.* ¶¶ 38-39. However, Plaintiff alleges that "Internal Affairs investigated the complaint[s] and the charges were dismissed." *Id.* The SAC does not allege that such review was insufficient or give any details about the incidents from which the Court can infer that McAusland's actions were improper despite the Internal Affairs decisions. *See White v. City of Vineland*, No. 16-8308, 2018 WL 4583509, at *6 (D.N.J. Sept. 24, 2018) ("[T]he statistics do not illuminate whether constitutional violations were perpetrated by members of the Police Department and then swept under the rug via an inadequate investigate process. As pleaded, instead, these statistics could indicate that the Police Department took these complaints seriously, investigated them rigorously, and found its officers performed adequately."). While Plaintiff alleges that the City Defendants failed to "establish or assure the functioning of a bone fide and meaningful departmental system for dealing with complaints of police misconduct" and states in a conclusory manner that complaints are handled with "bureaucratic power and official denials calculated to mislead the public," she does not provide any factual support for these allegations. SAC ¶ 57. Thus, the SAC does not plausibly allege that the City Defendants were deliberately indifferent to Andrew Casciano's rights.

11

In support, Plaintiff cites to *Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996), in which the Third Circuit found that the plaintiff "presented sufficient evidence from which a reasonable jury could have inferred that the City of Pittsburgh knew about and acquiesced in a custom tolerating the tacit use of excessive force by its police officers." *Id.* at 976. The *Beck* court noted that plaintiff's evidence was "not mere isolated events or mere statistics of the number of complaints. On the contrary, the plaintiff offered in evidence a series of actual written civilian complaints of similar nature . . . containing specific information pertaining to the use of excessive force and verbal abuse[.]" *Id.* at 973. The Circuit continued that the written complaints, which "came in a narrow period of time and were of a similar nature," were sufficient for a jury to infer that "the Chief of Police knew, or should have known, of [the officer's] propensity for violence when making arrests." *Id.* The court in *Beck* added that the plaintiff "presented evidence that the City of Pittsburgh has no formal system in place for tracking complaints against its officers and that the citizen complaints were not isolated incidents." *Id.* at 975. Here, Plaintiff merely claims, upon information and belief, that "allegations of excessive use of force were made against Defendant McAusland" on two occasions. SAC ¶¶ 38-39. Plaintiff continues that one "victim was allegedly struck by McAusland using a baton in the back and leg area" and another "victim was allegedly assaulted, maced, and had money stolen from him." *Id.* But again, Plaintiff alleges that investigations into the incident resulted in the charges being dismissed. *Id.* Moreover, the incidents were separated by nearly two years. Thus, *Beck* is distinguishable—here, Plaintiff has not plausibly pled that the City Defendants knew or should have known of McAusland or Then's propensity to use excessive force or otherwise violate citizens' rights. Counts I and II are accordingly dismissed without prejudice.

**B. Negligence – Count Seven**

Count Seven alleges that the City Defendants "had knowledge that Defendants McAusland and Then were unfit to serve as police officers on and prior to March 5, 2018," and that they were "negligent . . . in their supervision and retention of Defendants McAusland and Then" because they "knew of the particular unfitness, incompetence or dangerous attributes of Defendants McAusland and Then." *Id.* ¶¶ 99-101. To state a claim for negligence under New Jersey law, the plaintiff must plead four elements: (1) a duty of care owed by the defendant to the plaintiff (2) a breach of that duty (3) actual and proximate causation, and (4) damages. *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013). A plaintiff may assert a claim against an entity pursuant to the NJTCA based on a theory of negligent hiring or supervision. *Hoag v. Brown*, 935 A.2d 1218, 1230 (App. Div. 2007). To be found liable for negligent hiring, a plaintiff must show the following:

> (1) that the employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons and (2) that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury.

*G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019) (quoting *Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982)) (internal quotation marks omitted). To be liable for negligent supervision or training, a plaintiff must show that "(1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages." *Id.* (citation omitted).

The City Defendants argue that Plaintiff alleges no facts showing that the City Defendants knew Defendants McAusland and Then were unfit to serve as officers, and that the "SAC does not allege any facts establishing foreseeability of harm" relating to the hiring and supervision of

Defendants McAusland and Then.  Br. at 15-16.  For the same reasons that Plaintiff failed to sufficiently plead her Section 1983 and NJCRA claims, she has failed to plead a claim for negligent hiring, supervision, or retention; Plaintiff does not plausibly allege that the City Defendants knew or had reason to know of the individual officers "particular unfitness, incompetence or dangerous attributes"—*i.e.*, their likelihood of using excessive force or otherwise violating citizens' rights.

The SAC has no allegations as to what the City Defendants knew about McAusland and Then before they were hired as police officers.  Moreover, the SAC has no allegations whatsoever as to Defendant Then's history in the Paterson Police Department.  As to Defendant McAusland, the SAC alleges that the City Defendants were investigating "McAusland for alleged distribution and intent to distribute narcotics (heroin, crack cocaine, powder cocaine and marijuana) from October 2017 through April 2018."  SAC ¶ 40.  But these allegations are unconnected to use of force or the other rights at issue, and do not demonstrate that the City Defendants knew or should have known that McAusland posed a particular danger of using excessive force against the public. See Prior Op. at 9 (noting that Plaintiff had not shown "how McAusland's history of drug transactions related to [Andrew] Casciano's assault").

Plaintiff also alleges that the City Defendants "had prior knowledge that [McAusland] . . . was subject to two internal affairs investigations for alleged excessive use of force in the three years prior to March 8, 2018 and he had been involved in eight incidents involving excessive use of force in 2015 and 2016."  SAC ¶ 52.  The same infirmities noted above make these allegations insufficient to plausibly establish that the City Defendants knew or should have known of McAusland's particular unfitness to serve as a police officer for purposes of Plaintiff's negligence claim.

By comparison, in *Russo v. City of Paterson*, No. 16-5665, 2018 U.S. Dist. LEXIS 196921, at *15-16 (D.N.J. Nov. 16, 2018), the court considered whether excessive use of force complaints against five police officers established that the City of Paterson knew or had reason to know that the officers were dangerous. The *Russo* court ruled that the City of Paterson could reasonably foresee the use of excessive force for the three officers who respectively had thirty-four, fourteen, and twelve complaints filed against them. *Id.* at *16. The remaining two officers had two and one excessive use of force complaints filed against them, respectively, and the court in *Russo* held that the knowledge element was not satisfied as to them. *Id.* Here, Defendant McAusland allegedly had two excessive use of force complaints against him and Defendant Then is not alleged to have any. SAC ¶¶ 38-39. This is insufficient to sufficiently plead knowledge that either McAusland or Then had "dangerous propensities" or posed a danger of using excessive force against the public. Count Seven is accordingly dismissed as to the City Defendants.

### C. Negligence Under the Wrongful Death Act and Survivor's Act – Count Eight

Plaintiff brings claims under the Wrongful Death Act, N.J.S.A. § 2A:31-1, and the Survivor's Act, N.J.S.A. § 2A:15-3, in her capacity as administrator of the Estate. SAC ¶¶ 105-11. The Wrongful Death Act provides that

> [w]hen the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime.

N.J.S.A. § 2A:31-1. The Survivor's Act provides as follows:

> In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased

> would have had a cause of action if he had lived, the executor,
> administrator, or administrator ad prosequendum may recover all
> reasonable funeral and burial expenses in addition to damages
> accrued during the lifetime of the deceased.

N.J.S.A. § 2A:15-3a(1).  Both statutes require an underlying wrongful act.  *See White v. City of Vineland*, No. 16-8308, 2018 WL 4583509, at *8 (D.N.J. Sept. 24, 2018) ("Claims of 'survivorship' or 'wrongful death' are 'derivative' and therefore must be dismissed when the underlying claims have been dismissed." (citation omitted)); *Abramson v. Ritz-Carlton Hotel Co.*, No. 09-3264, 2011 WL 2149454, at *5 (D.N.J. May 31, 2011) ("Plaintiff's claims for . . . survivorship [and] wrongful death . . . are . . . derivative of the underlying negligence claim. Because the negligence claim will be dismissed, Plaintiff's derivative claims will also be dismissed.").  Plaintiff alleges that the underlying "wrongful act" is the "wrongful acts and/or negligence of Defendants."  SAC ¶ 108.  Because Plaintiff has not plausibly pled negligence or any other wrongful act by the City Defendants, the derivative Wrongful Death Act and Survivor's Act claims fail as well.  Count Eight is dismissed as to the City Defendants.

### D. Negligent Infliction of Emotional Distress – Count Nine

In Count Nine, Marie Casciano in her individual capacity alleges that the City Defendants are liable for negligent infliction of emotional distress ("NIED").  *Id.* ¶¶ 112-17.  Plaintiff alleges that she "discovered the body of Andrew Casciano hanging on December 23, 2019" causing her "severe mental anguish, suffering and shock."  *Id.* ¶¶ 113, 117.  Moreover, Plaintiff alleges that "Andrew Casciano left a note at the scene of his suicide relating his suicide to his lawsuit arising from the assaults of March 5, 2018."  *Id.* ¶ 114; D.E. 105-6.  In relevant part, the handwritten note, signed by Andrew Casciano, states "I did it because the lawsuit was to [*sic*] much of an ambarasment [*sic*]."  D.E. 105-6.

"To prove a claim of negligent infliction of emotional distress, a plaintiff must establish: (1) a duty of care; (2) breach of that duty; (3) causation; and (4) damage in the form of severe emotional distress that was reasonably foreseeable." *Jovic v. Legal Sea Foods, Inc.*, No. 16-01586, 2018 WL 5077900, at *6 (D.N.J. Oct. 18, 2018) (citation omitted); *Williamson v. Waldman*, 696 A.2d 14, 17 (N.J. 1997) ("A cause of action for negligent infliction of emotional distress involves traditional concepts of duty, breach, and causation." (citation omitted)).

The City Defendants argue that "Plaintiff's NIED claim is not well-pleaded" because "Plaintiff alleges no facts illustrating how the City Defendants owed her a duty of care and how they breached that duty of care." Br. at 19-20.  Plaintiff bases her NIED claim on the same allegations as her negligence claim discussed above—*i.e.*, that the City Defendants knew or should have known of McAusland's "dangerous propensities." Opp. at 27-28 ("Facts set forth in the body of the SAC demonstrate the dangerous propensities of Defendant McAusland and knowledge of the [City] Defendants[.]").  For the same reasons expressed above, this argument is rejected and Count Nine is thus dismissed.[8]

---

[8] Plaintiff cites to *Portee v. Jaffee*, 417 A.2d 521 (N.J. 1980) in support. Opp. at 28. *Portee* notes that to state a bystander claim for negligent infliction of emotional distress, a plaintiff must plead "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." *Id.* at 528; *see also Covington v. Twp. of Hillside*, No. 20-07461, 2021 WL 1186761, at *11 (D.N.J. Mar. 29, 2021) (noting that "whether Plaintiffs were in or around the vicinity when Decedent committed suicide" is a "necessary element" for an NIED claim).  Because the parties do not discuss these elements, the Court does not address them *sua sponte*.

**IV.     CONCLUSION**

For the reasons stated herein, the City Defendants' motion to dismiss the Second Amended Complaint, D.E. 83, is **GRANTED**.  Plaintiff may file an amended complaint that cures the identified deficiencies within thirty (30) days.  If Plaintiff does not file an amended complaint within this time, the counts dismissed herein will be dismissed with prejudice.  An appropriate Order accompanies this Opinion.

Dated: August 8, 2023

John Michael Vazquez, U.S.D.J.