NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIE CASCIANO, General Administratrix and Administratrix Ad Prosequendum of the ESTATE OF ANDREW CASCIANO, and MARIE CASCIANO, individually,<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF PATERSON, *et al.*,<br><br>       Defendants. | Civil Action No.: 19-9475<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

**I. INTRODUCTION**

This matter comes before the Court on the motion to dismiss counts one, two, seven, eight and nine of plaintiff Marie Casciano's ("Plaintiff") third amended complaint (ECF No. 118, "TAC" or "Third Amended Complaint") filed by defendants City of Paterson, Chief of Police Troy Oswald and Police Director Jerry Speziale (collectively, the "City Defendants") (ECF No. 128, "Mot."). Plaintiff opposed Defendants' motion (ECF No. 136, "Opp.") and Defendants replied in support (ECF No. 137, "Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motion is **GRANTED**.

**II. BACKGROUND**

  **A. Factual History**[1]

---

[1] For the purposes of this motion to dismiss, the Court accepts the factual allegations in the TAC as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

1

On March 5, 2018, Andrew Casciano called 911 after attempting suicide and was transported to St. Joseph's hospital. TAC ¶¶ 19, 20. Defendants Ruben McAusland and Roger Then—at the time Paterson Police Department officers—arrived at St. Joseph's in response. *Id.* ¶ 21. While Casciano was in the hospital waiting area, McAusland punched him in the face and Then pushed him to the ground. *Id.* ¶¶ 22-23. After Casciano was transported to a patient room, McAusland struck him in the face twice and said "I ain't [expletive] playing with you." *Id.* ¶ 24 (alteration in original). Then recorded the incident on his phone. *Id.* ¶ 25.

Then and McAusland pled guilty to criminal charges stemming from the above actions. *Id.* ¶¶ 27-29. Casciano subsequently filed suit on April 1, 2019 against Then, McAusland and the City Defendants. ECF No. 1. On December 23, 2019, Casciano committed suicide and his body was discovered by his mother, plaintiff Marie Casciano. *Id.* ¶ 32.

## B. Procedural Background

Following Casciano's death, an amended complaint was filed by plaintiff Marie Casciano in her individual capacity and as General Administratrix and Administratrix ad Prosequendum of the Estate of Andrew Casciano on June 16, 2021. ECF No. 47. On January 19, 2022, the Honorable John Michael Vazquez granted in part and denied in part the City Defendants' motion to dismiss. ECF Nos. 74, 75. Plaintiff filed a second amended complaint ("SAC") on February 17, 2022. ECF No. 77. Judge Vazquez granted in its entirety the City Defendants' renewed motion to dismiss on August 8, 2022. ECF Nos. 114, 115. Plaintiff filed the Third Amended Complaint on September 5, 2023. ECF No. 118. The Third Amended Complaint asserts the following claims against the City Defendants: 42 U.S.C § 1983 (Count one); New Jersey Civil Rights Act (NJCRA) (Count two); negligence (Count seven); wrongful death and survivorship (Count eight); and negligent infliction of emotional distress (Count nine).

### III. LEGAL STANDARD

**Federal Rule of Civil Procedure 12(b)(6)**

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips*, 515 F.3d at 234. Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted).

### IV. DISCUSSION

**A. Section 1983 and New Jersey Civil Rights Act**

"[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). "A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries . . . or that they were caused by a failure or inadequacy by the municipality 'that reflects a deliberate or conscious choice.'" *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 2015, 215 (3d Cir. 2001). The NJCRA is "construed . . . in terms nearly identical" to Section 1983. *Velez v. Fuentes*¸ No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (citation omitted). As such, the Court considers Plaintiff's Section 1983 and NJCRA claims together.

In the TAC, Plaintiff claims that the City Defendants are liable for "a custom of failing to investigate citizen complaints." Opp. at 20. (quoting *Brice v. City of York*, 528 F. Supp. 2d 504, 518 (M.D. Pa. 2007)). This assertion is based on newly pled factual allegations that from 2015

3

to 2019, the City of Paterson's Internal Affairs Division concluded 67 out of 68 excessive force complaints with a finding of "not sustained" or "exonerated." TAC ¶ 38; Opp. at 21. Plaintiff argues that defendants Then and McAusland were aware of this custom of "clearing of officers" and it "was a factor in their assault of Casciano." TAC ¶ 43.

In support of the opposition to the motion to dismiss, Plaintiff cites *Beck v. City of Pittsburgh* as the "seminal case concerning the failure to investigate civilian complaints on excessive use of force." Opp. at 20 (citing 89. F.3d 966 (3d Cir. 1996)). In *Beck*, the court overturned a judgment as a matter of law because the plaintiff had "presented sufficient evidence from which a reasonable jury could have inferred that the [municipality] knew and acquiesced in a custom tolerating the tacit use of excessive force by its police officers." *Beck*, 89 F.3d at 976. According to Plaintiff, the City Defendants "repeatedly exonerated officers accused of excessive force, just as was done by the City of Pittsburgh in *Beck*." Opp. at 23.

However, the court in *Beck* did not merely point to a general practice of exoneration in coming to its holding. Rather, the court noted specific evidence provided by the plaintiff that supported a finding that "the [municipality's] procedures are inadequate to protect civilians from police misuse of force." *Id.* at 974. For instance, the court found that the plaintiff had adduced evidence to show that the complaint review process was "structured to curtail disciplinary actions and stifle investigations" as well as made witness testimony "inert" while giving officer testimony "special, favorable consideration." *Id.* The court thus concluded that a jury could have determined that the review process at issue was "nothing more than a facade." *Id.*

Here, Plaintiff's allegation that the City Defendants "repeatedly exonerated officers" falls short of the specificity provided by the plaintiff in *Beck*. Opp. at 20. Crucially, Plaintiff does not identify any particular shortcomings of the City Defendant's complaint review process.

Instead, Plaintiff relies on the rate of exoneration to imply that "[t]he Internal Affairs Department was looking the other way." TAC ¶ 41. But mere statistics, without more, do not establish that the review process was thereby flawed. *See White v. City of Vineland*, No. 16-8308, 2018 WL 4583509, at *5-6 (D.N.J. Sept. 24, 2018) (finding allegation that all 185 complaints of excessive force against department's officers ended in exoneration fails to "illuminate whether constitutional violations were perpetrated . . . and then swept under the rug" or whether the department "took these complaints seriously, investigated them rigorously, and found its officers performed adequately").

Plaintiff's Section 1983 and NJCRA claims were previously dismissed for the same failure to plead specific investigatory shortcomings. In the SAC, Plaintiff alleged in support of her claims against the City Defendants that McAusland was twice exonerated on accusations of excessive force. SAC ¶¶ 38-39. Dismissing Plaintiff's claims, Judge Vazquez explained that the complaint did not "allege that such review was insufficient or give any details about the incidents from which the Court can infer that McAusland's actions were improper despite the Internal Affairs decisions." ECF No. 114 at 11. As a result of this failure to allege specifics regarding Internal Affairs investigations, Judge Vazquez held that Plaintiff's Section 1983 and NJCRA claims against the City Defendants were not plausibly alleged. ECF No. 114 at 11. The TAC fares no better.

Plaintiff also does not explain how the alleged practice of exoneration caused her claimed injuries. A plaintiff must show that "there was a plausible causal connection between the [municipality's] alleged custom of inadequately investigating complaints of police misconduct and the injuries Plaintiff suffered." *Monaco v. City of Camden*, No. 04-2406, 2008 WL 8738213, at *9 (D.N.J. Apr. 14, 2008). Plaintiff claims that the alleged custom "was clearly

5

known" to defendants Then and McAusland and was thus "a factor in their assault." TAC ¶ 43. But beyond this conclusory assertion, Plaintiff does not explain how McAusland and Then would be privy to the results of Internal Affairs investigations such that they would impact the officers' actions. Without this link in the chain, Plaintiff cannot plausibly allege a "connection" between the practices of the Internal Affairs Department and her injuries.

In sum, Plaintiff fails to adequately plead the alleged custom of failing to investigate citizen complaints. Accordingly, Plaintiff's Section 1983 and NJCRA claims against the City Defendants are dismissed.

### B. Negligence

Plaintiff alleges that the City Defendants were negligent in both their hiring and supervision of defendants McAusland and Then. TAC ¶ 113-14. To establish negligent hiring or supervision, a plaintiff must show: "(1) the employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons, and (2) the employer's negligence in hiring or supervision [of] the employee resulted in the dangerous attribute proximately causing plaintiff's injury." *Johnson v. Provenzano*, No. 12-1253, 2014 WL 7011545, at * 9 (D.N.J. Dec. 11, 2014) (citation omitted).

Plaintiff has not supplied sufficient allegations to support a negligent hiring claim. Dismissing the SAC, Judge Vazquez previously noted that Plaintiff supplied "no allegations as to what the City Defendants knew about McAusland and Then before they were hired as police officers." ECF No. 114 at 14. The TAC does not cure this deficiency. Rather, Plaintiff asserts that the aforementioned "alleged improper operation of the Internal Affairs department" supports a negligent hiring claim. Opp. at 25. But Plaintiff does not explain how investigations of

complaints against officers sheds light on the behavior of defendants Then and McAusland before they were hired as officers, as would be necessary for a claim. *See Adams v. City of Camden*, 461 F. Supp. 2d 263, 269 (D.N.J. 2006) (dismissing negligent hiring claim where plaintiff failed to allege that officers "displayed any unfitness prior to their hiring").

Plaintiff also fails to plead sufficient facts to support a negligent supervision claim regarding either Then or McAusland. As to Then, Judge Vazquez previously found that the SAC contained "no allegations whatsoever" detailing Then's conduct as an officer. ECF No. 114 at 14. Plaintiff responds in the TAC by including an additional factual allegation that Then was accused of false arrest in October 2017 and later exonerated by one of the City Defendants. TAC ¶ 37. However, Plaintiff does not explain how an accusation of false arrest demonstrates that the City Defendants should have known that Then posed a danger of using excessive force, as alleged here. *See Snell v. City of York, Pennsylvania*, 564 F.3d 659, 672 (3d Cir. 2009) ("[M]erely because a person has been falsely arrested does not mean that excessive force has been used.") (citation omitted).

Plaintiff made a similar unavailing argument in the SAC concerning alleged improper acts by an officer defendant. Specifically, Plaintiff claimed that the City Defendants were liable for negligent supervision because they were aware that McAusland had been subject to investigation for narcotics distribution. In discounting this allegation as a basis for Plaintiff's claim, Judge Vazquez explained that narcotics distribution was "unconnected to use of force or the other rights at issue" and thus does not demonstrate that an officer "posed a particular danger of using excessive force against the public." ECF No. 114 at ¶ 14. Likewise, the present claim of false arrest against Then is "unconnected to use of force" and consequently would not put the

7

City Defendants on notice that Then "posed a particular danger of using excessive force." *Id.* As such, it cannot support a claim of negligent supervision over Then.

Turning further to the discussion of negligent supervision over McAusland, the TAC fails to supply sufficient allegations of prior incidents to support a claim. In the SAC, Plaintiff alleged that McAusland was subject to two investigations for alleged excessive use of force and involved in eight incidents involving excessive use of force. SAC ¶ 52. Dismissing the claim, Judge Vazquez explained that two excessive force complaints are "insufficient to sufficiently plead knowledge" for purposes of negligent supervision. ECF No. 114 at 15 (citing *Russo v. City of Paterson*, No. 16-5665, 2018 LEXIS 196921, at *15-16 (D.N.J. Nov. 16, 2018) (finding one or two excessive force complaints fail to "satisfy the knowledge element")). Plaintiff repeats these allegations in the TAC and does not plead any additional facts regarding McAusland's behavior as an officer, as opposed to the department-wide allegations regarding a practice of exoneration. *See* TAC ¶¶ 35-36. Thus, Plaintiff fails to adequately allege that the City Defendants negligently supervised McAusland.

In sum, Plaintiff fails to adequately allege negligent hiring or supervision as to either Then or McAusland. Accordingly, Plaintiff's negligence claim against the City Defendants is dismissed.

### C. Wrongful Death and Survivorship

Plaintiff asserts claims against the City Defendants under the Wrongful Death Act and the Survivor's Act stemming from Andrew Casciano's suicide. TAC ¶¶ 118-124. The Wrongful Death Act "permits certain persons . . . to bring a tort action against a person who tortiously caused the death of another." *Marie v. McGreevey*, 314 F.3d 136, 140 (3d Cir. 2022). The Survivor's Act "gives executors or administrators a right of action for tortious injury or damage

8

to the deceased or his property incurred prior to death." *Anderson v. Cnty. of Monmouth*, No. 5-1809, 2005 WL 3588531, at *5 (D.N.J. Dec. 30, 2005) (citation omitted). In either case, an underlying tortious act by the defendant is required. *See Smith v. Joseph P. Riley, D.O.*, Nos. 14-72476, 15-7374, 2016 WL 3398454, at *4 (D.N.J. June 15, 2016) ("[B]oth wrongful death and survivorship claims require the decedent to have had a viable claim.").

Plaintiff fails to plead an underlying tortious act by the City Defendants. Although the TAC alludes to "wrongful acts and/or negligence" of the City Defendants, Plaintiff in fact only alleges negligence. *See* TAC ¶¶ 71-130. Because the negligence claim is dismissed, there is no "viable claim" to ground liability under either statute. *Smith*, 2016 WL 3398454, at *4. Accordingly, the Wrongful Death Act and Survivor's Act claims against the City Defendants are dismissed. *See* ECF No. 114 at 16 ("Because Plaintiff has not plausibly pled negligence or any other wrongful act by the City Defendants, the derivative Wrongful Death Act and Survivor's Act claims fail as well.").

### D. Negligent Infliction of Emotional Distress

Plaintiff asserts a negligent infliction of emotional distress claim against the City Defendants stemming from her discovery of her son's body following his suicide. TAC ¶¶ 125-130. "To prove a claim of negligent infliction of emotional distress, a plaintiff must establish: (1) a duty of care; (2) breach of that duty; (3) causation; and (4) damage in the form of severe emotional distress that was reasonably foreseeable." *Jovic v. Legal Sea Foods, LLC*, No. 16-1586, 2018 WL 5077900, at *6 (D.N.J. Oct. 18, 2018) (citation omitted).

Plaintiff fails to establish that the City Defendants owed her a duty of care or breached that duty of care. Plaintiff bases her theory of negligent infliction of emotional distress on the same alleged failures of the City Defendants as in her negligence claim discussed above. *See*

9

Pltf. Br. at 30. Because Plaintiff fails to adequately plead her negligence claim against the City Defendants, her negligent infliction of emotional distress claim is dismissed, as well.

## V.     CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted.

**Accordingly, IT IS** on this 30th day of August, 2024

**ORDERED** that Defendants' motion to dismiss counts one, two, seven, eight and nine of Plaintiff's Third Amended Complaint (ECF No. 128) is **GRANTED**; and it is further

**ORDERED** that counts one, two, seven, eight and nine of Plaintiff's Third Amended Complaint (ECF No. 118) against defendants City of Paterson, Troy Oswald and Jerry Speziale are **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that to the extent Plaintiff can cure the pleading deficiencies identified in the Court's opinion, she shall have thirty (30) days from the date of this order to file an amended complaint. Insofar as Plaintiff submits an amended complaint, she shall also provide a form of the amended complaint that indicates in what respect it differs from the Third Amended Complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

**SO ORDERED.**

/s/ *Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**